So I will spend very little time on the preliminaries. Please remember our light system. When you get the yellow light, you have two minutes left. The red light, stop, unless we tell you to stay. Of course, we can do that. Please recall that rebuttal is for rebuttal only, and we always appreciate sights to the record when you're telling us facts that you think are important. So we will begin with case number 16-11377, United States v. Marunda, and we'll begin with Mr. Beck. May it please the Court. My name is Brandon Beck, and I represent Farai Marunda, the appellant in this case. Your Honors, this case is about imposing reasonable evidentiary restraints on a district court's ability to impose a restitution award, and there are two reasons why this court should vacate the restitution award. First, despite the plea agreement's appeal waiver, Mr. Marunda should be able to challenge the restitution award as a sentence exceeding the statutory maximum. Second, the evidence in this case is inadequate to support the district court's restitution award. To my first point, Your Honors, despite his waiver of appeal, Mr. Marunda can challenge the district court's restitution award as a sentence exceeding the statutory maximum. In Chemical and Metal Industries in 2012, this court held that a restitution award can implicate the statutory maximum. Two years later, in United States v. Keel, this court explained that a challenge to a restitution award as in excess of a statutory maximum is not barred by an appeal waiver. The crucial question then becomes, what is a statute's maximum punishment? The answer is twofold. First, in the abstract, a statute's maximum punishment is the greatest imposition that the text of the statute will allow, and that's true whether we're talking about a term of imprisonment or a restitution award. In more concrete terms, looking to the text of the MVRE, the default rule is that the maximum punishment is the monetary loss which is directly and proximately caused by the offense of conviction. Now, in this case, however, Mr. Marunda agreed that the punishment could exceed just the offense of conviction in his plea agreement. In fact, he agreed in his plea agreement to pay restitution up to the limits of his relevant conduct. That is the bounds of what is permitted. Okay. We have the precedents we have, but isn't this very circular? You can challenge the sufficiency of the evidence by saying this evidence is insufficient and that gets you past the appeal waiver. You won't encounter that in something that says the statutory maximum is 40 years, and somebody got 41 years. That's pretty clear. We don't have to sit there and say, well, 40 years meant something else. So to me, it's very circular here. I mean, again, I understand the precedents we have, but occasionally we take cases on bonk and that kind of thing, and so broadly speaking, isn't this just very circular to say the statutory maximum doesn't apply here because there's insufficient evidence and therefore we can challenge the sufficiency of the evidence? Your Honor, I understand your concern, and I think the concern to an extent is unavoidable, and the reason for that is restitution, the proper restitution in a ward in a case is on a case-by-case basis, and the maximum restitution of a ward can actually be adjusted as more evidence of direct and proximate loss is injected into the case and as more things are agreed to in the plea agreement that set the upper bounds of what a restitution award can be. So in other words, it would be impractical for Congress to place a bright-line rule on the statutory maximum restitution, but that's something that's much more easily done in a term of imprisonment statute. Okay, well, what about if you said the victim lost $1 million, and so that's the statutory maximum, and then the question of proximate cause is the sufficiency argument? So you would separate those, so you would say as long as the court didn't award over $1 million, we don't have a statutory maximum problem, and if there was an appeal waiver, we're done. If there wasn't an appeal waiver, then, of course, we examine the proximate cause issue. I mean, you're putting them both as the statutory maximum, the causation and the dollars. I'm saying why wouldn't you normally... Because, for example, 40 years, we don't look at what caused the 40 years, we just say it's 40 years. So, again, why wouldn't you say that the victim's losses are the statutory maximum, and then if you get past the appeal waiver or there is no appeal waiver, the proximate cause is the sufficiency challenge? Your Honor, I want to answer your question in two different ways. First, my authority for the language I'm using comes from United States v. Sharma, where it interprets the statute 3663A as being bounded by the direct and proximate cause of the offensive conviction unless the defendant agrees to more. And the more direct answer to your question, Your Honor, is simply that the statute that we're referring to places these limitations on what the restitution award can be. So you may have instances... In fact, you very often have instances where there are multiple counts, say, in a fraud case, because there are multiple victims, and the defendant, in their plea agreement, agrees to plead guilty to one count in response the government agrees to dismiss all of the other counts. The MVRA says that unless the defendant agrees to more, the restitution award is limited to the count that they pleaded guilty to. Now, the more agreement in this case is relevant conduct, and that sets the upper stage here. Now, Your Honor, it may be the case, and this Court certainly can interpret it this way, that the statutory maximum is always what the statute says here, the direct and proximate cause of the offensive conviction. So even once you get into the relevant conduct, that would be above the statutory maximum yet we still would not be able to argue about anything within the relevant conduct because we've agreed otherwise, and the government could simply enforce the plea agreement. I want to let you get to the other part, but I have three quick questions on the waiver. This is a yes-no question. Would you say our precedent, published and unpublished, on this has tension among itself, or does it all depend on the different phrases and languages of the waiver? There's certainly tension, yes. There is tension, okay. I agree with that. The second question is we can always just move past. If we don't want to deal with waiver, we want to get to the merits, we can do that, right, under our law? As I understand it, yes, and, of course, the government can seek to enforce the waiver. Well, they can in their response to your question, but as to our authority, we can always just say we're going to pretermit this, we'll get to the merits, right? I believe so, Your Honor. It's not jurisdictional. That's right. And I don't have a case to cite on that. That's my understanding. The last question on waiver I had is let's say the government did not want to reduce the plea to one 1029 charge, which helps defendants. They said the only way we're going to let you plead is if there is no appeal. Is there a way under your proposed rule that you can waive any appeal of restitution, or will it always implicate stat max, and therefore the only way you could waive it is if you said, and this includes beyond statutory maximums? Yes, Your Honor. In the way I'm interpreting the MVRE is the statutory maximum includes direct and proximate cause of the offensive conviction. Here in the factual resume, Mr. Maroondah admitted, and this would be deemed proven beyond a reasonable doubt, that the direct offensive conviction caused a loss in excess of $1,000. So $1,000 plus one cent is nothing we could argue about. Right. Here's the example that I think is wrong. I'm asking, how could they have written this waiver so you wouldn't be here? They could have listed the specific number that we're agreeing to to pay restitution. Okay. That's the solution to all of these cases, in my view. Interesting. And that gives a meeting of the minds. The problem we have here is Mr. Maroondah agreed. I'll pay more than what I owe under the statute. And under my argument, the district court imposed even more than that, and now the government is coming and saying... Yeah, but if y'all had agreed to the $3.5 million but still had this general notion about you can appeal an excess of statutory maximum, you could still make the exact same argument you're making here. Because you could still say we agree to the $3.5 million, but it turns out it wasn't directly and proximately caused, and blah, blah, blah. So you could still make that same argument. So it would seem like you'd have to say, except for the award of restitution, you can appeal a statutory maximum, and with respect to the award of restitution, you can't. And then whether you said the number or not, you'd be clear. Well, I think there's a couple solutions to that problem, Judge Haynes. One, if we do define the statutory maximum as the direct and proximate cause of the offense of conviction, yet we agree to more, the government's remedy is very straightforward, which is to simply enforce the plea agreement that we entered into. So we can avoid talking about statutory maximum or not because the government can just say you agreed to that, and they would win in that case. How does that differ from here? Well, that differs from here because we didn't agree to a number. Oh, you're saying if there was a number. If there was a number, the government could simply enforce that through the plea agreement, not necessarily through the appeal waiver, but the result for the government would be the same. The other way this court could look at it that would equally solve the problem is to say we're going to define the statutory maximum the way the MVRA does, and then we're going to say that if you agree to more, we're going to raise the statutory maximum to that number. So in other words, the appeal waiver would encompass that which is the direct and proximate cause of the offense of conviction plus that which was agreed to if it's more than that. So then that would put us in a position, Judge Haynes, and I know it doesn't solve your initial concern that we would still be in a position to where we could come in and argue that it exceeded what we agreed to. That's why I think the best solution in all circumstances is the meeting of the mind where we agree to a specific figure. So is the problem here that your client just didn't apprehend how big this number would be? Your Honor, the problem is that it was incomprehensible that the number could be this amount. And the reason I say that is based on the evidence that was put forth by the government in this case. And that brings me to my second point here, that the evidence was inadequate to attribute the district court's restitution award to Mr. Marunda. The number that was put into the PSR by U.S. Probation that they received from IRS as to the amount of loss in a broad fraud scheme lasting multiple years was a little bit more than $3.5 million. That number first appeared in the PSR on page 174 of the record. Now, if you look at that particular page in the record, it's a spreadsheet, and it lists some different EFIN, which are these numbers that are associated with tax return software. It lists a year, and it lists an amount. And we're not disputing that the amount adds up to $3.5 million. But what we are disputing is that they cannot attribute that amount to the actions in any way with evidence of Mr. Marunda. When defense counsel objected to that page in the PSR, defense counsel essentially said, where are these numbers coming from? Please show us how Mr. Marunda fits into all of these numbers, especially considering the fact which was conceded that Mr. Marunda was incarcerated at the time some of these numbers were being used to defraud the IRS. So that raises a question that presents a serious problem. U.S. Probation, instead of attaching any documentation, the government, instead of attacking any documentation, they said, we're going to call a special agent from the IRS to testify. But if you read their response to the PSR, and I'm referring to probation, not the government, they said, we're not attaching any documentation because we don't think we have to, because all we have to do is make a reasonable estimate, nothing more. And I think that presented a serious problem in this case. But the part of the record I think is particularly important are pages 134, 135, and 136. That's the cross-examination of Agent Tetzlaff from the IRS. And there the agent agreed that we don't know what numbers Mr. Marunda was using, that he was incarcerated at the time some of them were used, that these numbers he's seen, she's seen instances where these numbers were bought and sold in arm's-length transactions on the black market. But at the end of that whole cross-examination, doesn't the sentencing court sort of engage in an exchange directly and says, not 100%, but more likely than not? Well, Your Honor, and I have a concern about that interaction. And the concern is simply that the court said, do you think, in your view, is it more likely than not that these numbers are correct, meaning the actual loss suffered by the IRS? It doesn't tie it to Mr. Marunda, number one. Number two, that's the district court's province to make the decision on preponderance of the evidence. The exact same question could simply be reverted as, Agent Tetzlaff, do you believe the government has carried its burden by preponderance of the evidence? Well, that's the purview of the district court, not the agent. So I don't know what that does in that case. And it's a bit of a raising-the-eyebrow moment when I was reading the transcript. It's well put. And I have only about 20 seconds left in my initial argument, so I'd like to express my overall global concern, which is if the district court had put any number in this case, say a billion dollars, I believe the government's argument is that there's nothing we could say about that. And I think that that's a problem. And I reserve the rest of my time for rebuttal. All right. Thank you. We're out of time. All right, let's hear from you, Mr. Portugal. May it please the Court, Brian Portugal for the United States. When Mr. Marunda pled guilty, he knew three things. First, he knew that he was agreeing to restitution for all relevant conduct. Second, he knew that that was an unknown amount that would be determined by the district court. And three, he knew that he was waiving his right to challenge that unknown amount, except to the extent that it exceeded the statutory maximum. For those reasons and following this court's decision in Frazier, the court should enforce the waiver and bar Mr. Marunda from challenging, as relevant conduct, the amount of tax fraud that was accepted by the district court during the PSR. Frazier cites Keel, correct? That's correct. And Keel cites approvingly the chemical and metals case. That's right. So the three are all consistent with one another? I read them as being consistent with one another, Your Honor. Can you help us square them up a little bit? Sure. Keel on a general waiver enforced or barred the defendant from challenging restitution, but simply noted that there was no claim of a statutory maximum violation. But if that claim had been made,  and chemical, the court said that a general reservation of excess of statutory maximum allowed for an argument that an amount was not supported. Frazier says that when the challenge is not to the amount of the victim's loss, but to the defendant's responsibility for relevant conduct causing that loss, an appellate waiver bars review. So that was my early exchange with your opposing counsel, which was is that the right way to look at it, to say the victim's losses are the maximum. So if the victim lost $1 million, without regard to who caused it, but the victim lost $1 million in this circumstance, then that's the statutory maximum. If the judge awarded $2 million, there can be an appeal despite the waiver. If, on the other hand, the judge awarded $900,000, but the challenge is that Mr. X isn't the one that caused the $900,000, that is barred by the statutory waiver. Is that the argument you're – is that how you are congealing all these cases and harmonizing them? That's the argument I'm making in the circumstance where the defendant, number one, agrees to restitution for relevant conduct, doesn't know what that number is, but agrees that the district court will determine what that number is and specifically waives the right to challenge that amount, unless, to your point, Judge Haynes, the amount is not actually the victim's loss. So if the agent here put on evidence a $3.5 million and the district court awarded $4 million, then you would agree this could be appealed or the appeal waiver would not bar the appeal. If there was no evidence to support that additional $500,000. What I'm saying is there was no evidence, period, other than $3.5 million. That's the only evidence that was put on anywhere in this case, but the judge, for some reason, wrote $4 million down. Then you would agree that exceeds the statutory maximum allows for an appeal. On the other hand, where there's evidence to support $3.5 million of losses, the question of whether our person, our appellant, caused that loss is, in your opinion, barred by the waiver. Correct. Okay. Fair enough. But do you agree, Judge Higginson asked the sort of pre-termitting question, if we think there is evidence to support this, regardless of the whole issue of the appeal, it's not a jurisdictional bar to our consideration of the merits of this appeal waiver. That is correct. So we could pre-termit that and go right to the heart of it if we wanted to. That's correct, Your Honor. I think, though, that there are good reasons for the court not to pre-termit and to have a precedential holding. Okay. Tell me what that is. Following Frazier. I think the court and the parties and the district courts would all benefit from the court not pre-termiting and going to the merits and issuing a precedential opinion following Frazier, articulating that in circumstances where there is an agreement to pay restitution for all relevant conduct, the defendant waives the right to challenge that, except with respect to a statutory maximum violation, that the defendant is barred on appeal from challenging relevant conduct. With respect to the government, you have to have said to them you wanted to enforce the waiver, correct? I'm sorry? When they indicate, are you going to enforce the waiver, you communicated yes, you would in this case, right? Yes. Yeah. It's just waiver is already getting complex. There are so many subsections. And then restitution is a very difficult piece. And you put the two together with a preponderance proof in a case that's really hard to establish loss, forcing waiver is maybe it isn't the best case for us to try to clear it all up. But that's our call. Yes. All right. Do you think there's sufficient confusion that a harmonizing opinion, a brilliant harmonizing opinion would be helpful? Well, I think the court's order certainly, the court's order directing the federal public defender to at least consider this issue before pressing their motion to withdraw to me indicates that the court would probably benefit by harmonizing its case law. On the merits, I would like to say one thing specifically. One last thing on the harmonizing. Sure. Can we do that as a panel, or do we have such inconsistency that we need an en banc? I don't see anything approaching inconsistency that would necessitate an en banc session, no. Okay. With respect to the merits, the defendants pointed out the issue that they raised below, that Mr. Marundo was incarcerated for a portion of the time that he's held responsible for loss. And actually, if you look at the PSR addendum at page 199, it clarifies that he was incarcerated for a period of time for which he's held responsible for loss, but the agent and probation were able to determine that some of the tax returns at issue were started at the time that he was incarcerated, but modifications were made to those returns after he was released from custody. Okay. I understand if somebody's in prison, maybe they couldn't have been the one who shot XYZ out at the bar or whatever. I don't really understand why being in prison means you couldn't commit a fraud act. I mean, people do stuff from prison. We've heard about, I mean, I certainly don't have personal knowledge, but we just hear about people meeting and they pass letters and I don't know what, and fraud occurs via the prison through a lot of weird mechanisms. So, I mean, are you just spotting them that argument, or are we sure that there could be no conspiracy or continuation of a fraud from a prison cell? No, Your Honor. I'm not spotting them that argument. I just think that it has a little bit of intuitive appeal to say I couldn't be responsible because I was in prison for that time, but certainly I think in any case. It's not intuitive to me is what I'm saying. Okay. Fair enough. This day and age, computers and notes being passed and prison guards sometimes not being fully honorable, et cetera, and these things happen, I'm just saying, yes, I agree. If the question is could he physically have been at the Jones Bar last night when he was actually imprisoned, I agree. That's a full alibi. But on a crime like this that doesn't require physical presence, I'm just challenging that assumption. I think that's fair. It's fine. If you want to spot him, you can spot him. I just was confused why everybody seems to agree, well, if you're in prison, you can't do anything wrong. I'm like, really? No, Your Honor. I don't spot them. I've heard from prison. I mean, I've seen shows on that. Correct. And this is just to remind the Court, the initial indictment, Count 1, is a conspiracy to commit wire fraud. So his activity was charged as ongoing. And could have been from the prison, so we just don't know. Correct. Okay. But, of course, that would be perhaps his argument would be that would be your burden to show that while he's in prison he's still involved with people that could get this done. Except that to do that he would need to challenge the PSR with rebuttal evidence, which he did not do here. I'd like to make one more point on the merits, and that is to the extent that the appellant is pressing their challenge here that in some way paragraph 23 of the PSR is a bare-bones assertion. It's certainly not. That paragraph describes the nexus between Mr. Marunda and the e-fins that were used to cause the tax loss, and the agent also testified to that at the sentencing hearing. If the Court doesn't have any further questions, I'm happy to rest on my brief and ask you to affirm. Thank you. Thank you so much. Okay. Mr. Beck, you've reserved time for rebuttal. May it please the Court. Your Honor, I'd like to address a couple of this Court's concerns expressed in the government's response. To the question of if the IRS in this case can simply say or even establish that their total losses over a period of time qualify as a certain amount or add up to a certain amount, the reason we can't define the statutory maximum as that number is because the very statute that imposes restitution limits it to the direct and proximate cause of the offensive conviction. So presumably there could have been many people in this scheme and working, perhaps even unrelated, as Agent Teslap conceded on cross-examination, and it wouldn't be just and it wouldn't make sense and it wouldn't be consistent with the statute to say that Mr. Marunda could possibly be on the hook for all of that without evidence, and that's the biggest problem in this case. Your Honors. But y'all didn't have to waive your appeal rights. I mean, that's part of the bargaining. You know, you say, well, we don't want to waive our appeal rights. Well, we won't give you this deal if you don't want to. Well, then we're going to trial. That's what a negotiation is. So, I mean, there has to be some meaning to it, and it seems to me your version of the case law and your version of the precedent is there is no meaning to it. I can challenge exceeding the statutory maximum pretty much anything I want to about restitution. So it really has no meaning, an appeal waiver, when it comes to restitution. It does have meaning, Your Honor, but in that same agreement we're talking about, Mr. Marunda negotiated a carve-out reserving the right to appeal a sentence in excess of the statutory maximum, sentence being defined also in that same agreement as including restitution. That's also consistent with this court's precedent at the time that this agreement was signed. If Mr. Marunda thought that the number could be $3.5 million or everything that these numbers were used to do over a multi-year period, perhaps he wouldn't have signed the agreement. And that's one of the problems we face is... But then he could have negotiated a cap on that, but no more than... I mean, I've kind of seen that with sentences. We don't know... We're going to let the judge sentence. We don't know what the PSR will show. However, no more than X. You know, that kind of thing. So you could certainly have said, well, I'll agree, relevant conduct, blah, blah, blah. We don't know what that exact dollar is. We can't put an exact dollar in here. However, no more than. That would have been better, and that's my recommendation to everyone on both sides. Let's just agree to a number so we don't have to come back and fight. But the cap he did agree to is relevant conduct, and that would certainly exceed... Yeah, and that's a... That is open to construction. We'll say that. A million dollars is a little bit more clear than relevant conduct. And we're finding that here, because you all disagree on even when we get past the... Let's say we get completely past the waiver, the merits are, shall we say, disputed. They're disputed, Your Honor, but I have a hard time seeing... When I do a relevant conduct analysis looking at scope and foreseeability, how the evidence in this case could possibly get to $3.5 million. Is that because you don't think he's connected to these EI, FN, or whatever the right acronym is, numbers, or because those numbers are wrong? I don't think the numbers are wrong, Your Honor. So you're saying he's just not connected to them? We don't know. The problem is we don't know anything. We know very, very little in this case, because the government put on very little information. We have the paragraph in the PSR that lists numbers, computer software, in years. We have the agent who testified generally about how these types of schemes work, yet at the same time conceded that these numbers have been, in her experience, bought and sold in arm's-length transactions. The burden is on the government in this case. And, Your Honor, the question, for example, of could Mr. Marunda have been working with someone else on the outside in the prison, that's certainly possible. It's also possible he wasn't. The problem is we don't know, because there's no evidence either way, and the party bearing the burden has to absorb that loss or that problem when they cannot put forth evidence. And I just want to leave with one final observation. Prior to representing criminal defendants, I represented defendants in personal injury cases, and I can't help but keep coming back to an instance where a plaintiff has sued someone for $3.5 million, claiming that's their medical expenses, yet refuses to turn over a single bit of documentation supporting it, and that it would hold up on a court of appeals. I can't see how that would be. So thank you very much. I appreciate it. Now they don't have PSRs in civil cases. Thank you. We appreciate both sides' arguments and the cases under submission.